## UNITED STATES *v.* SEMMER.

(*Circuit Court, S. D. New York.* February 12, 1890.)

1. CUSTOMS DUTIES—CLASSIFICATION—MANUFACTURES OF GLASS.
    Plate-glass, which has passed through the various processes of manufacture up to and including the process of grinding and smoothing on both sides, in which state it is an unfinished product in the manufacture of polished plate-glass, but was, according to some of the testimony, an article known to the trade and commerce of the United States at and prior to the date of the passage of the tariff act of March 3, 1883, as "ground-glass," and used, although to a very limited extent, as such, is

dutiable under Schedule B of said act, (Tariff Index, new, 143,) "porcelain and Bohemian glass, chemical glassware, painted glassware, stained glass, and all other manufactures of glass or of which glass shall be the component material of chief value, not specially enumerated or provided for in this act, 45 per cent. *ad valorem,*" and not under the same schedule (Id. 140) as "cast polished plate-glass, unsilvered."

2. SAME—ENUMERATED ARTICLES—SIMILITUDE.

The "similitude clause" (section 2499) of the statute has no application, inasmuch as the term "manufactures of glass" is an enumeration in the tariff act.

At Law. Action to recover a balance of unpaid duties.

The defendant imported the goods in question from England, and entered them at the port of New York, September 9, 1889, and paid the estimated duties at 45 per cent. *ad valorem,* as "window glass, manufactured," whereupon the merchandise was all delivered to the defendant. The entry was thereafter duly liquidated by the collector, and the goods classified as "polished plate-glass, unsilvered," at 50 cents per square foot, under schedule B of the tariff act of March 3, 1883, (Tariff Index, new, 140.) The defendant duly protested against this classification by the collector, and duly appealed to the secretary of the treasury. The protest limited the defendant to the proof that his importation was "manufacture of glass, (ground-glass.)" On the trial it was shown that the goods in suit were sheets of plate-glass, varying in size from 51 to 79 and a fraction square feet each. The expert witnesses in the manufacture testified on the part of the plaintiff that at and prior to March 3, 1883, plate-glass was a material formed of sand, soda, and other ingredients fused in pots or crucibles; that the molten mass was then poured upon metal tables, and, when intended to be finished as polished plate, was usually cast half an inch thick; that, while still red hot, the sheets were placed in annealing ovens, where they were kept hot, and gradually allowed to cool during four or five days; that they were then "squared up trim," and placed upon the grinding-machines, using sand and water, first on one side and then on the other, until the glass was reduced to about one-half its original thickness; that the sheets were then carefully washed to remove the sand, and were next submitted to the smoothing process, done upon different machines, in which emery of various grades of fineness was used; that this process was continued until the glass reached the "smoothed" condition, in which all the roughness of the grinding was removed from both sides, rendering the glass translucent, and fitting it for the next process of "polishing,"—a distinct operation, done upon still other machines, using felt polishers, with rouge (red oxide of iron) and water, by means of which the already smoothed surfaces of the glass were burnished or polished, and thereby rendered transparent. It was shown by these witnesses that the sample of glass in suit was in the condition known in the manufacture as "smoothed," and that the final process of polishing was a comparatively small part of the total manufacture of polished plate-glass. There was conflict of testimony as to whether plate-glass, in the condition of defendant's importation, was known in the trade and commerce of the United States in 1883; but there was evidence introduced by the defendant to show that it was so known as "ground plate," or "ground

and smoothed plate-glass," in sizes as large as defendant's sheets; and that it was used for certain purposes, principally for illuminated clock-dials. The defendant, in giving his evidence on the witness stand, admitted, on cross-examination, that he imported the glass in suit for the purpose of finishing it into polished plate, and that for the purpose of his manufactory it was raw material. At the close of the testimony the United States attorney moved the court to direct a verdict in favor of the plaintiff, on the ground that the defendant had not proved that the glass in suit was a "manufacture of glass," within the terms of the tariff act; and cited Heyl, (Tariff Index, new,) pars. 166, 167, 154, 179; *U. S.* v. *Potts,* 5 Cranch, 284; *Lawrence* v. *Allen,* 7 How. 794; *King* v. *Smith,* 4 Chi. Leg. N. 281; *Kennedy* v. *Hartranft,* 9 Fed. Rep. 24; *Frazee* v. *Moffitt,* 18 Fed. Rep. 584; *Arthur* v. *Sussfield,* 96 U. S. 128; *Watch Co* v. *Spaulding,* 19 Fed. Rep. 411; *Wolff* v. *Spalding,* 26 Fed. Rep. 609; *Brewing Co.* v. *Whitney,* 29 Fed. Rep. 780; *Hartranft* v. *Wiegmann,* 121 U. S. 609, 7 Sup. Ct. Rep. 1240. The counsel for the defendant moved the court to direct a verdict in favor of his client, claiming that the merchandise in suit was shown to be a "manufacture of glass." The court denied both motions.

*Edward Mitchell,* U. S. Atty., and *James T. Van Rensselaer,* Asst. U. S. Atty.

*Stephen G. Clarke* and *A. Livingston Norman,* for defendant.

LACOMBE, J., (*orally charging jury.*) The question for your determination upon the evidence in this case is whether the article imported here is a manufacture of glass, other than rough or rolled plate glass. Fortunately we have a very clear definition of the word "manufacture" given us by the supreme court in a recent case. I refer to the case of *Hartranft* v. *Wiegmann,* 121 U. S. 609, 7 Sup. Ct. Rep. 1240, in which the court states that the mere fact of the application of labor to an article, either by hand or by mechanism, does not make the article necessarily a manufactured article, within the meaning of that term as used in the tariff laws, unless the application of such labor is carried to such an extent that the article suffers a species of transformation, and is changed into a new and different article, having a distinctive name, character, or use. Of course, the tariff laws deal with the commerce of the country; and in interpreting them we continually revert to the usages of trade and commerce, and constantly have upon the stand commercial men to enlighten us as to that trade and commerce. So this very distinction which the supreme court has pointed out is to be taken by you, and applied in a commercial sense; that is, the labor bestowed upon the article is to be continued to such an extent as to transform it into a new and different article commercially, having a distinctive name in commerce, having a distinctive character commercially, or having a distinctive commercial use. It makes no difference whether you or I would have any particular use for the article as a different article from that from which it was made. The question is whether the trade and commerce of this country have a different use for the article,—

other and different from that which they have for the article out of which it was made. Take an illustration or two. From certain materials found in nature man gathers a proper proportion, and places them in a crucible or melting pot, and by the application of heat fuses them. The result of that fusion is a substance known as "glass." If the melting pot were taken off the fire after the fusion is completed, and allowed to cool, the solid lump which would be found in it, as the result of the chemical union of the constituents which were placed in it, would be the substance known as "glass,"—crude glass, the crudest glass conceivable. It is a manufacture. The component materials are transformed into a new substance. Now, that same glass may be, by the application of labor, transformed from the molten state, by a process of blowing and cutting, into an article which is known as cylinder or window glass, which is a manufacture of glass, because it is of a distinctive character, and has a distinctive name, and a distinctive use, from the crude glass out of which it was made. And so, by a different process of manufacture, this same crude glass, when poured upon a table and pressed with a roller, becomes what is known in trade and commerce as rough or rolled cast plate-glass. That, also, is a manufacture of glass. That, also, has a use, character, or name distinct from the use, character, or name of the crude glass in the crucible out of which it was made. It also appears here, with regard to the polished plate-glass, that by various processes, and by the application of a great deal of labor, this rough or rolled plate-glass is eventually transformed into polished plate-glass. It needs no witnesses to tell us that polished plate is a manufacture of glass, within the definition of the supreme court. We need only to walk up and down Broadway to see that acres of it are applied to a use to which rough plate-glass is not applied. It also is, therefore, a manufacture of glass.

It is claimed in this particular case that the article Exhibit S, the subject of importation here, has been subjected to such an amount of labor (that is, that labor has been applied to it to such an extent) that it has obtained in commerce a distinctive name, and has a different commercial character, and is commercially applied to a different use from that of the rough plate-glass which it was before the labor was applied to it; and whether his claim is sound or not is the only question which comes before you for your determination. That it was rough plate-glass originally, I charge you. That rough plate-glass is a manufacture of glass I also charge you. But, inasmuch as the defendant has by his protest confined himself to the claim that it is a manufacture of glass not enumerated in the tariff act, and the tariff act does enumerate rough plate-glass, he must satisfy you (for the burden is upon him) by a fair preponderance of proof that it is a manufacture of glass other than rough plate-glass. If he has succeeded upon the proof in satisfying you upon that point,—that it is rough plate-glass advanced to such a stage, by the application of labor, that it has been transformed commercially into a new and different article, with a distinctive commercial name, character, or use from that out of which it was made,—then he is entitled to your verdict; otherwise your verdict must be for the plaintiff.

Reference has been made by counsel to the intended use of this particular importation. That is of no particular concern in this case. Where congress has not chosen to fix a tariff according to the specific use of a particular article imported, (and that is the case here,) it is of no concern to what particular use that particular article is to be applied. The question is, what are the commercial uses of the article, if there are several of them, or what is the general commercial use if there is only one, and not for what particular use did this individual importer bring in this specific lot of goods? The same duty is to be laid upon the class of goods, irrespective of the individual who imports them, or of the use to which they are put.

The plaintiff also insists upon the similitude which it claims the evidence shows to exist between this and polished plate-glass. The similitude clause upon which the plaintiff relies, however, applies only to articles which are not enumerated in the tariff law. This article, by one name or the other, either as rough glass, or as a manufacture of glass, is enumerated in the tariff act, and therefore the similitude clause does not apply. (After ruling upon various requests by both sides, the court proceeded:) Among the other requests asked by the plaintiff is this:

"To find that the goods are a 'manufacture of glass,' the jury must be convinced by a fair preponderance of proof that they are made in a shape for use as a finished product, without being afterwards materially changed in form, and are not merely an unfinished product of partially manufactured plate-glass, suitable only to be used in the nature of raw material, in a convenient form for finishing into a complete article. The application of labor to an article, either by hand or by mechanism, does not make the article necessarily a manufactured article, within the meaning of that term as used in the tariff act."

A part of that proposition I have already charged you. The rest I now charge you; calling attention, however, to the phraseology of the request. You must be, no doubt, convinced, by a fair preponderance of proof, that the goods which are claimed to be manufactures are made in a shape for use as a finished product, without being afterwards materially changed in form. But it is not a material change in form to cut, for instance, 30 yards of carpet off of a running piece of stair carpet; and it is not a change in form to cut 24 square feet of glass to be used for the lighting of a show window, 6 feet by 4, out of a sheet which may happen to contain 28 or 30 square feet. So, too, while in order to find that the goods are a manufacture of glass you are to be satisfied that they are not merely an unfinished product of partially manufactured plate-glass, suitable only to be used in the nature of raw material, you are yet to give due heed to that word "only." If they subserve some other use than that which the plaintiff insists they subserve to-wit, raw material,—material partially advanced, which, by further steps, by further labor, becomes something else,—if, I say, they subserve some other or different use in commerce,—then you are entitled, so far as that branch of the case is concerned, to find them a manufacture of glass.

The jury rendered a verdict for the defendant.