In re IRWIN et al.

(Circuit Court, S. D. New York. June 22, 1894.) .

1. CUSTOMS DUTIES—BAUXITE—ALUMINA.
  The white powder known to the trade as "refined bauxite," which is manufactured from bauxite by removing from the crude ore the impurities of iron, silica, and titanic acid, is not bauxite, within the meaning of paragraph 501 of the free list of the tariff of October 1, 1890.

2. SAME.
  The white powder known to the trade as "refined bauxite" or "hydrate of alumina" is made by heating in a furnace a mixture of crude bauxite, ground fine, and soda ash, until the carbonic acid of the latter is expelled. The mixture is then cooled and treated with water, which dissolves the resulting aluminate of soda, leaving behind the silica, iron, and titanic acid of the bauxite; and the solution is treated with gaseous carbonic acid, which converts the soda into a carbonate, and allows the precipitation of the alumina. From this precipitate, when washed and dried, results the powder in question. *Held*, that this is alumina, within the meaning of paragraph 9 of the tariff act of October 1, 1890, and is dutiable as such at six-tenths of a cent a pound.

This was a protest by Thomas Irwin & Sons, before the United States board of general appraisers, against the decision of the collector as to the rate of duty to be paid on certain imported merchandise. The board sustained the contention of the importer, and the collector appeals.

James T. Van Rensselaer, Asst. U. S. Atty., for collector.
Stephen G. Clarke and Henry A. Wyman, for importers.

COXE, District Judge. The collector classified the merchandise in question under paragraph 9 of the act of October 1, 1890, which is as follows:

"Alumina, alum, alum cake, patent alum, sulphate of alumina, and aluminous cake, and alum in crystals or ground, six-tenths of one cent per pound."

The importers protested, insisting that it should have been admitted free under paragraph 501 of the free list as "Bauxite, or beauxite." The board found the following facts:

"First. The merchandise under consideration is a white mineral powder, resembling pulverized alum in appearance. Second. It is, chemically considered, hydrate of alumina, or alumina and water combined. Third. It is known and dealt with in trade under the name of 'refined bauxite,' and differs from crude bauxite only in the fact that it has gone through a process of manufacture by which the impurities of iron and silica have been mechanically removed from the crude article. Fourth. It is used for the same pur-

pose as the crude bauxite, namely, for the manufacture of alum or aluminous product, such as the sulphate of alumina or alum cake. Fifth. We further find that the article is refined bauxite, which is nothing more than crude bauxite, with the impurities of iron and silica removed, without affecting the chemical composition of the article or its chief utility. There are samples of this mineral found in nature which are about as free from impurities as the refined article, and a trihydrate may be reduced through the application to a dihydrate by an expulsion of an equivalent of water."

The protests were sustained and the decision of the collector was reversed. Subsequently the collector took additional testimony in this court. The question then is, is the imported merchandise bauxite?

The testimony seems very clear that the word bauxite means, and prior to October 1, 1890, meant, when used commercially, the crude mineral, and the weight of testimony is to the effect that it meant only that. The word bauxite alone would not describe the imported merchandise. That word alone, when used in trade, indicated the crude ore, which, when taken from the mine, resembles lumps of coarse earth or clay, and contains iron, silica, titanic acid, besides other substances. When business men spoke of bauxite they meant this substance, and not the manufactured white powder free from iron, sand and titanic acid. No business man would have thought of filling an order for bauxite with the imported article.

Again, taking into consideration the testimony in this court, it is thought that the proposition that the article in question is not bauxite when considered from a chemical point of view is also sustained by a preponderance of testimony. The article imported is known as "hydrate of alumina" or pure alumina. Its analysis is as follows:

Aluminium oxide, $Al_2O_3$, 65.05 per cent.
Silica, $SiO_2$, 1.80 " "
Carbonate of soda, 3.60 " "
Water, balance, 29.55 " "

The processes, called the "wet" and "dry," by which it is manufactured are very complicated, requiring chemical knowledge and skill. When the latter process is used the crude ore is ground very fine, and, generally, it is bolted. It is then mixed with, at least, a small quantity in weight of soda ash, and the mixture is put in a furnace and heated to a bright red heat until all the carbonic acid of the soda ash is expelled. When this stage is reached it is withdrawn from the furnace and left to cool. After cooling it is put in a leaching apparatus and treated with water, which will dissolve the alumina in it as an aluminate of soda, and leave behind the greater part of the silica, all of the iron and all of the titanic acid. The mixture, then in liquid form, is placed in large cylinders with paddles in them to keep it in motion. The gaseous carbonic acid is introduced into this liquid through a pipe, and when the soda is converted into a carbonate of soda, all of the alumina will fall out as a powder in a wet state. The carbonate of soda is withdrawn, the powder is washed several times and dried, and the result is the hydrate of alumina in question. The original water of combination is entirely expelled by the roasting process and a new water of com-

bination added. The product is a new chemical combination from which the silica of the crude bauxite has been nearly expelled, the ferrous oxides and titanic acid entirely expelled and 3.60 per cent. of carbonate of soda added. The product of this elaborate process is worth eight or nine times as much as the crude bauxite. To refer to the manufactured article as being either chemically or commercially the same as the coarse clay from which it is made is an inaccurate use of language. As well might one allude to flour or bread as being the same thing as wheat because they are made of wheat. Bauxite is the name used to designate the ore as it comes from the mine. This is conceded on all hands. That it means anything else is doubtful; that it includes such a product as the hydrate of alumina in question is disproved by a preponderance of evidence. It must be assumed that congress used the word in its commercial sense as it was known in the market, as it was understood in trade by importers and large dealers, at the date of the tariff act. When this meaning is ascertained it must control without regard to the scientific designation of the article, the material of which it is made or the use to which it may be put. Twine Co. v. Worthington, 141 U. S. 468, 12 Sup. Ct. 55; Arthur's Ex'rs v. Butterfield, 125 U. S. 70, 75, 8 Sup. Ct. 714; Robertson v. Salomon, 130 U. S. 412, 9 Sup. Ct. 559. It is not important to consider how it was known in the laboratory, but even if its chemical nomenclature should be considered it would not, as before stated, aid the importers.

The court is of the opinion that the new evidence establishes the following propositions with sufficient clearness: First. The merchandise in question has never been known as bauxite commercially, chemically or in common parlance. It is not bauxite. Second. It is a manufactured article, the product of an elaborate and difficult process which radically changes its nature so that it has lost all but one of the ingredients found in the original ore and has added an ingredient never found there. In short, it is changed into a new and different article having a distinctive name, character and use. Hartranft v. Weigmann, 121 U. S. 609, 7 Sup. Ct. 1240; U. S. v. Semmer, 41 Fed. 324; Erhardt v. Hahn, 5 C. C. A. 99, 55 Fed. 273. If additional argument were needed to sustain this view of the legislative intent, it will be found by a comparison of the imported merchandise with the articles mentioned in paragraph 9. These articles may all be produced from the mineral bauxite. Many of them are much nearer to crude bauxite than the imported hydrate of alumina. Can it be that congress intended to levy a duty on "aluminous cake" and permit the merchandise here involved to enter duty free? Aluminous cake is the crude mineral simply treated with acid. It contains all the undesirable ingredients of bauxite, namely, iron, silica and titanic acid. Aluminous cake pays duty, but this much more finished product, under the importers' construction of the statute, escapes by hiding behind the name of bauxite. It is thought not only that congress did not intend to admit it free, but did intend to levy duty upon it under the name of alumina. It follows that the decision of the board should be reversed and that of the collector affirmed.