C. J. Tower & Sons *v.* United States (No. 3996) [1]

United States Court of Customs and Patent Appeals, January 4, 1937

*Barnes, Richardson & Halstead (Joseph Schwartz* of counsel) for appellants.
*Joseph R. Jackson,* Assistant Attorney General (*Ralph Folks* and *John F. Kavanagh,* special attorneys, of counsel), for the United States.

[Oral argument December 7, 1936, by Mr. Schwartz and Mr. Folks]

Before Graham, Presiding Judge, and Bland, Hatfield, Garrett, and Lenroot, Associate Judges

Garrett, Judge, delivered the opinion of the court:

The merchandise here involved, imported from Canada, was invoiced as "Bauxite Ore Concentrates Grade 'H' Leached, Unground." The Collector of Customs classified it under paragraph 214 of the Tariff Act of 1930, taking duty at 30 per centum ad valorem; importers

[1] T. D. 48769.

protested, claiming it to be properly classifiable as refined bauxite under paragraph 6 of the act, with duty at one-half of 1 cent per pound. The United States Customs Court, Third Division, overruling the protest, sustained the action of the collector, and importers appealed to this court.

The competing paragraphs read:

PAR. 6. Aluminum hydroxide or refined bauxite, one-half of 1 cent per pound; potassium aluminum sulphate or potash alum and ammonium aluminum sulphate or ammonia alum, three-fourths of 1 cent per pound; aluminum sulphate, alum cake or aluminous cake, containing not more than 15 per centum of alumina and more iron than the equivalent of one-tenth of 1 per centum of ferric oxide, one-fifth of 1 cent per pound; containing more than 15 per centum of alumina or not more iron than the equivalent of one-tenth of 1 per centum of ferric oxide, three-eighths of 1 cent per pound; all other aluminum salts and compounds not specially provided for, 25 per centum ad valorem.

PAR. 214. Earthy or mineral substances wholly or partly manufactured and articles, wares, and materials (crude or advanced in condition), composed wholly or in chief value of earthy or mineral substances, not specially provided for, whether susceptible of decoration or not, if not decorated in any manner, 30 per centum ad valorem; if decorated, 40 per centum ad valorem.

It will be noted that the first clause of paragraph 6, *supra*, reads "Aluminum hydroxide or refined bauxite * * *", and the controversy here is under that clause.

The record shows that aluminum hydroxide is produced by a chemical process, known as the Bayer process, and that the imported product was produced in an electric furnace by what is known as the metallurgical process. One of the expert witnesses for the importers testified that the imported product is aluminum oxide, and that the only chemical difference between it and aluminum hydroxide is that the latter contains water; that "with that exception they are one and the same thing." In other words, there are two methods of producing aluminum oxide, one being by removing the water from aluminum hydroxide produced by the Bayer process, and the other by electrically treating raw bauxite ore which is the metallurgical process.

The Government chemist, called as a witness for the Government, testified, with respect to the two processes, as follows:

In the Bayer process, the general idea is to dissolve the alumina out with caustic soda, or sodium carbon, and make it precipitate from the solution thus obtained, the aluminum hydroxide. Then calcine that at a high temperature into aluminum oxide. In the metallurgical process, the bauxite is treated in an electric furnace at a very high temperature with two grades of bauxites I believe are used. They are mixed in just the proper proportions, so that with coke, so they form a soluble slag, and the alumina comes to the top, molten aluminum, and that is poured off, and then that is blown into globules as it cools, and this is leached to a sulphuric acid, and leaves alumina, pretty pure alumina, as the slag is thrown off as titanium, iron, silica.

It is the Government's theory, as stated in its brief, that "The words 'refined bauxite' appearing in paragraph 6, *supra*, are synonoy-

mous with and used in the alternative for the words 'aluminum hydroxide' in paragraph 6." To state it differently, the Government, in effect, contends that only aluminum hydroxide was intended to be included in the first clause of paragraph 6, *supra*. On behalf of appellants it is insisted that the provision for "refined bauxite" was intended to cover all refined bauxite whether in the form of aluminum hydroxide or aluminum oxide.

It may be said that the product at issue is shown to be above 99 per centum $Al_2O_3$—the chemical symbol for alumina or aluminum oxide, these terms being used interchangeably. The analysis by the Government chemist of the official sample placed in evidence shows 99.31 per centum aluminum oxide, the remaining elements, or "impurities", consisting of small percentages of silica, iron oxide, and titanium oxide. The process by which it was made is referred to at various places in the record as a refining process, but the witness for the Government, while saying that "Refining is purifying the substance, taking out the impurities and leaving a refined substance", refused to agree that the product "is what is commercially known as refined bauxite."

There is no question of commercial designation as distinguished from common meaning presented in the case and we see no occasion for splitting hairs as to the common meaning of the word "refined." Whether the product at issue be properly classifiable under paragraph 6, *supra*, or not, it is, in the ordinary meaning of the term, a refined product. It is simply more highly refined than the material known as aluminum hydroxide.

The record does not disclose the stage of refinement of aluminum hydroxide. That is to say, there is nothing in the record to show the percentage of pure alumina in any given quantity of aluminum hydroxide. The record does disclose (and concerning this there seems to be no controversy) that aluminum oxide is simply aluminum hydroxide with the water removed therefrom. The water, according to one of importers' witnesses, is "chemically combined" with the alumina.

It may be remarked that "aluminum hydroxide" is agreed to be synonymous with "hydrate of alumina", and "aluminum oxide" to be synonymous with "alumina."

Both parties rely strongly upon legislative history to support their respective contentions, and the decision of the trial court seems to be based solely upon that history which it recites, beginning with the 1890 tariff act.

Appellants go back to the tariff act of 1883 which provided that "Bauxite" should be free of duty and "Alumina" should be dutiable at 60 cents per hundred pounds. The tariff act of 1890 had provisions substantially similar to the above provisions of the 1883 act. In December 1892 the United States Board of General Appraisers

(now the United States Customs Court) in the case of *In re Thos. Irwin & Sons et al.*, T. D. 13655, G. A. 1893, held certain merchandise described as "hydrate of alumina or bauxite", which had been assessed by the collector under the 1890 act as alumina, to be free of duty as bauxite, it being found that the merchandise was dealt in as "refined bauxite." Upon appeal, the United States District Court for the Southern District of New York reversed the board, it being held that the word "bauxite" as used in the act related to the crude mineral and did not describe the imported merchandise which, considered from the chemical standpoint, was declared to be hydrate of alumina. *In re Irwin et al.*, 62 Fed. 150. Upon appeal, the United States Circuit Court of Appeals affirmed the judgment of the District Court. *Irwin et al.* v. *United States*, 67 Fed. 232. In its decision the Circuit Court of Appeals said:

* * * While the article, technically speaking, is hydrate of alumina, it sufficiently appears from the testimony * * * that in common speech the terms "hydrate of alumina" and "alumina" are used as synonymous.

The last-named decision (under the act of 1890) was rendered March 5, 1895, subsequent to the passage of the tariff act of 1894, which act carried provisions for bauxite and alumina, similar, except as to the rate of duty upon the latter, to the provisions for those products in the act of 1890, paragraph 9 of which latter act became paragraph 8 of the act of 1894. It read:

9. Alumina, alum, alum cake, patent alum, sulphate of alumina, and aluminous cake, and alum in crystals or ground, * * *.

The free list provision for bauxite read:

501. Bauxite, or beauxite.

February 13, 1896, the Treasury Department issued a ruling, T. D. 16758, to the effect that the alumina contemplated by paragraph 8, *supra*, of the 1894 act was "the alumina of commerce described * * * as hydrate of alumina $(Al_2O_3+H_2O)$" and that anhydrous alumina $(Al_2O_3)$ was not entitled to classification as alumina under paragraph 8, but should be classified under paragraph 60 of the act as "a chemical salt not otherwise provided for." It will be noted that the chemical formula of the "Anhydrous alumina" named in the ruling is the same as that of the product here at issue from which we conclude that the product whose classification was there ruled upon was of the same character as that here involved.

In the tariff act of 1897, changes were made in the language of both the alumina and bauxite paragraphs, so that the respective paragraphs of that act read:

93. * * * bauxite, or beauxite, crude, not refined or otherwise advanced in condition from its natural state, one dollar per ton * * *.

4. Alumina, hydrate of, or refined bauxite, six-tenths of one cent per pound; alum, alum cake, patent alum, sulphate of alumina, and aluminous cake, and alum in crystals or ground, one-half of one cent per pound.

The distinction between crude and refined bauxite has been maintained in all the general tariff acts passed since that of 1897. The language of the pertinent alumina portions of the tariff acts of 1909 and 1913 was "Alumina, hydrate of, or refined bauxite, * * *." In the 1922 act the clause was changed to "Aluminum hydroxide or refined bauxite, * * *" and this was continued in the 1930 act.

It is noted that in the 1909 act, paragraph 4 read in part:

Alumina, hydrate of, or refined bauxite, containing not more than sixty-four per centum of alumina, four-tenths of one cent per pound; containing more than sixty-four per centum of alumina, six-tenths of one cent per pound. * * *.

This seems to have been the first act to provide duty according to the alumina content.

There is no showing in the record as to what administrative practice was followed in classifying alumina oxide under the tariff act of 1897 and subsequent acts, prior to May 14, 1932. On the latter date T. D. 45632, 61 Treas. Dec. 940, 941, was issued, paragraph 5 of which reads:

(5) *Bauxite concentrates.* A nearly pure ground oxide aluminum manufactured from bauxite or other earthy or mineral substance by purifying, calcining, and grinding, is not refined bauxite classifiable under paragraph 6, tariff act of 1930, but is properly dutiable at the rate of 30 per cent ad valorem under paragraph 214 as a manufactured earthy or mineral substance, not specially provided for. Letter to collector of customs, Pittsburgh, Pa., dated May 3, 1932.

The report of the collector transmitting the instant case to the Customs Court cites T. D. 45632(5) as the authority under which he acted in making the classification complained of.

Appellants point out that it was in the 1897 act that Congress first limited the bauxite provision to *crude* bauxite, and first made *eo nomine* provision for *"refined* bauxite" [italics ours]; that those enactments were after the judicial decisions and departmental ruling, T. D. 16758, above alluded to, and relies upon the familiar rule that a change in language imports a change in legislative intent. The Government, on the other hand, insists, in effect, that, in view of the legislative, judicial, and administrative history, it is clear that it was not the intention of Congress to include aluminum oxide in paragraph 6, *supra.* It is urged that the meaning of the word "or" in the clause at issue does not mean "and", but means "that is to say", or "to wit", so that the clause should be interpreted as if it read "Aluminum hydroxide, that is to say (or to wit), refined bauxite."

It is conceded by counsel for appellants that the word "or" as used in some other clauses of paragraph 6, *supra*, does have this meaning, because the products so connected are the same products under different names and Congress used both names. For example,

"potash alum" is the popular name for a product whose chemical name is "potassium aluminum sulphate", and so as to some of the other products alternatively named in the paragraph. It is denied, however, that as used in the particular clause at issue here, the word has that meaning because, it is argued, in effect, aluminum hydroxide (one form of refined bauxite) is one article and aluminum oxide (another form of refined bauxite) is another; a fact which, it is said, was well known to Congress when *eo nomine* provision was made in the act of 1897 for refined bauxite.

The substance of the history has been set forth in some detail, because of the fact that both parties have urged it, and particularly because of the fact that the decision of the trial court seems to rest wholly upon it.

That courts may resort to history such as that which has been recited for aid in determining legislative intent, when a statute is ambiguous, is a familiar rule, and it seems not improper to resort to it here. We do not, however, deduce from a consideration of such history, the same conclusion as that reached by the trial court.

The clause "Aluminum hydroxide or refined bauxite" when given its normal construction does not seem to us necessarily to limit the provision simply to aluminum hydroxide, since that was not the only form of refined bauxite known at the time of the passage of the Tariff Act of 1930. The product here involved was then known and the product is a form of refined bauxite which differs from aluminum hydroxide in the manner heretofore described. So far as the record discloses, it may be said that these two forms are the only forms of refined bauxite, but, however, this may be, had Congress desired to limit the provision to aluminum hydroxide it would seem that it might have been done by simply omitting the phrase "or refined bauxite," and, in our opinion, the history recited indicates that Congress intended the clause at issue should include aluminum oxide as well as aluminum hydroxide.

In the *Irwin* case, *supra*, the several tribunals did not have aluminum oxide before them. The product upon which they passed was "hydrate of alumina" or aluminum hydroxide, but, as has been stated, the Circuit Court of Appeals expressly held that "hydrate of alumina" was synonymous with "alumina," and it is here conceded that "alumina" is synonymous with "aluminum oxide." It seems clear that had "aluminum oxide" been there involved, it would have been held not to be "bauxite," in a tariff sense, but there is nothing to indicate that it would have been there distinguished, for tariff purposes, from aluminum hydroxide. The inference is directly to the contrary, and certainly there is nothing to indicate that the several tribunals regarded aluminum hydroxide as being the only form of refined bauxite.

Aside from the judicial decisions, we have as pertinent only the department rulings. T. D. 16758, above alluded to, was promulgated in 1896. It is not unreasonable to conclude that the changes in phraseology, relating to alumina and bauxite, made in the tariff act of 1897, were made partly, at least, in view of that ruling and with the purpose of supplanting it. As for T. D. 45632(5), *supra*, that relates to the provisions of the Tariff Act of 1930, and involves the question which is being for the first time passed upon by the courts in the instant case.

There does not seem to us to be any sound or compelling reason for holding, upon the facts shown in this record, that aluminum oxide, a form of refined bauxite, is not included along with another form, aluminum hydroxide, in paragraph 6 of the Tariff Act of 1930. Certainly "refined bauxite" is more specific than the general "earthy or mineral substances" paragraph under which the collector classified the merchandise.

The judgment of the United States Customs Court is *reversed* and the cause *remanded* for further proceedings not inconsistent with this decision.